IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARC S. CASON, JR. | : | |
| Plaintiff | : | |
| v. | : | Civil Action No. JFM-06-1560 |
| SERGEANT ARMSTRONG, UNKNOWN CORRECTIONAL OFFICERS, and CORRECTIONAL MEDICAL SYSTEMS | : : | |
| Defendants | : | |

o0o

## MEMORANDUM

Pending in the above-captioned civil rights action are defendants' motions to dismiss or for summary judgment. Papers No. 19 and 24. Plaintiff was advised of his right to file a response in opposition to each motion and of the consequences of failing to do so, but has filed nothing further. Upon review of the papers filed, this court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, defendants' motions, construed as motions for summary judgment, will be granted.

**Background**

On August 16, 2005, plaintiff, who was incarcerated at the Metropolitan Transition Center, was stabbed multiple times in the face, head and scalp by another inmate. Plaintiff alleges that there were no correctional officers in the area where he was assaulted and that after officers were alerted about his injury, he was left in an unsecured area for 20 minutes because officers could not unlock the security grill. He further claims that he received inadequate medical care because medical staff did not know how to stop his wounds from bleeding and did not know how to properly administer oxygen.

Plaintiff does not dispute defendant Armstrong's statement that he did not work on the day plaintiff was assaulted. Paper No. 24 at Ex. 1, pp. 1–2. Armstrong further claims that if plaintiff had named officers who were actually working that day, his complaint does not state a constitutional claim. According to records submitted by Armstrong, the first officer to respond to the report that plaintiff was injured was Kenya Singleton. *Id.* at pp. 6–7. Her report states that at 8:50 p.m. she observed plaintiff bleeding profusely from his neck and face and made a radio call for assistance to the area.[1] *Id*. Plaintiff arrived in the infirmary ten minutes later, where Nurse Nwankana began applying pressure dressings to plaintiff's wounds and called 911. Paper No. 19 at Ex. A, p. 2. Although plaintiff was conscious and able to speak when he arrived at the infirmary, he developed difficulty breathing, requiring administration of oxygen. Paper No. 24 at Ex. 1, pp.15–16; Paper No. 19 at Ex. B, p. 1. At the time plaintiff began experiencing difficulty breathing, four additional nurses arrived to assist in his care. Paper No. 24 at Ex. 1, pp.15–16. When the oxygen was administered, one report indicates that none of the nurses knew how to turn it on. *Id*. There is no indication of how long it took for medical staff to turn on the oxygen, although the report states that the oxygen was turned on. *Id*. By 9:35 p.m., plaintiff was in an ambulance on the way to the University of Maryland Shock Trauma Center. Paper No. 19 at Ex. B, p. 1.

Plaintiff required surgery and treatment in the Intensive Care Unit, for his wounds. Upon his return to the Division of Correction's custody on August 19, 2005, he remained in the MTC infirmary until August 24, 2005. Paper No. 19 at Ex. A, p. 3. During his stay at the infirmary, plaintiff was prescribed a soft diet, nutritional supplements, and medication[2] for pain relief. *Id*. He

---

[1] Although the Serious Incident Report refers to the injured prisoner as Marcus Carson, it is clear from a comparison of the identification number that the report references Marc S. Cason.

[2] Plaintiff was provided with tylenol 3 for three days and ibuprofen for five additional days.

2

was released to general population and there is no indication that plaintiff developed any complications as a result of his wounds.

## Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**Analysis**

Vicarious Liability

Defendant Correctional Medical Systems ("CMS") asserts entitlement to dismissal because the claim against it is based upon vicarious liability. Paper No. 19. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* or vicarious liability does not apply in §1983 claims. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md., October 22, 1992), *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). Plaintiff claims that medical staff were not properly trained and, as a result, rendered constitutionally inadequate medical care. Paper No. 1. There is no evidence that medical staff lacked the training required to render

4

emergency medical care in this case; the claim appears to be an attempt to impose vicarious liability on CMS. As such, defendant is entitled to be dismissed from this case. The court's inquiry does not end there; the court must liberally construed the complaint to address the underlying Eighth Amendment issue presented therein. *See Haines v. Kerner*, 404 U.S. 519 (1972). Even if this court were to construe the complaint as having been filed against appropriate medical personnel[3], however, it is apparent that plaintiff cannot prove that he was denied adequate or appropriate medical care.

## Medical Claim

In order to state an Eighth Amendment constitutional claim for denial of medical care, plaintiff must demonstrate that defendant's acts (or failures to act) amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condi-tion, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Furthermore, mere

---

[3] Likewise, the complaint as to defendant Armstrong will be considered as if it had been made against correctional staff who were present at the time of the incident.

5

negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

"'[B]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U. S. 1, 9 (1992)). "[A]n injury or condition is 'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)). In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention. *See Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (D.N. Ill. 1984) (citation omitted).

Clearly plaintiff suffered a serious injury requiring emergency medical care which was received in a timely manner. His claim against medical staff is based on the assertion that they did not know how to stop the bleeding and did not know how to administer oxygen. Paper No. 1. There is no evidence that plaintiff received inadequate medical care. His wounds were serious and required extraordinary measures to control the bleeding. The inability to completely stop the bleeding is not evidence that the medical care was incompetent. The temporary inability to turn on the oxygen is also no indication that the medical care provided was in any way inadequate. The care provided to plaintiff for his injuries was prompt and responsive to his needs, falling far short of care so inadequate that it constitutes cruel and unusual punishment. Correctional Medical Systems is,

therefore, entitled to summary judgment in its favor.

Failure to Protect Claim

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 833– 34 (citations omitted).

The assault plaintiff suffered was egregious. There is no evidence, however, that the assault was the result of prison staff ignoring a known risk of harm to plaintiff. Plaintiff's allegation that he was forced to remain in an unsecured area with his assailant for 20 minutes is belied by the undisputed evidence submitted indicating that plaintiff was in the infirmary 10 minutes after his injury was discovered. Accordingly, defendant Armstrong is entitled to summary judgment in his favor.

**Conclusion**

The undisputed facts in this case establish no basis for a finding that plaintiff's constitutional rights were abridged. Defendants are, therefore, entitled to summary judgment which shall be granted by separate order which follows.

<u>April 18, 2007</u>                                          <u>   /s/                                      </u>
Date                                                                    J. Frederick Motz
                                                                              United States District Judge